682 So.2d 966 (1996)
Cheryl Finley GRAY, Plaintiff-Appellant
v.
ECONOMY FIRE & CASUALTY INSURANCE CO., et al., Defendants-Appellees.
No. 96-667.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1996.
*967 Lauri Gene Boyd, Ferriday, for Cheryl Finley Gray.
Ronald J. Fiorenza, Alexandria, for Economy Fire & Casualty Insurance Co.
Before DOUCET, C.J., and SAUNDERS and AMY, JJ.
AMY, Judge.
Plaintiff, Cheryl Finley Gray, slipped and fell while visiting at the house of the defendants, Ronald and Bernice Poole. Gray filed suit against the Pooles and their homeowner's liability insurer, requesting damages for her injuries. The defendants filed a motion for summary judgment, which the trial court granted. Gray appeals from that judgment. For the following reasons, we affirm.

DISCUSSION OF THE RECORD
On April 5, 1994, at approximately 9:00 a.m., plaintiff, Cheryl Finley Gray, went to visit her friend, Bernice Poole, at Bernice's house located in Concordia Parish, Louisiana. While Bernice was visiting with Cheryl, Bernice mopped her kitchen floor with clear water. Bernice was then called to go out and run an errand. At that point, Bernice asked Cheryl if she would stay at the Pooles' house and open the door for an employee of an insect extermination company, who was expected to come that morning to service the Pooles' residence. Cheryl acquiesced and remained at the Pooles' house.
After Bernice left the residence, Cheryl mopped Bernice's tracks from the kitchen to the back door with the damp mop that Bernice had used earlier that morning. Cheryl returned the mop to its place near the refrigerator in the kitchen. Cheryl then walked into the living room and sat down to wait for *968 the employee of the insect extermination company to arrive. However, after waiting for approximately forty-five minutes, Cheryl walked through the kitchen and into the utility room to collect her tennis shoes. Cheryl had taken off her shoes when she first arrived at the Pooles' house. She put on her shoes and then began to walk out of the utility room. When Cheryl was about half-way out of the utility room door, she slipped and fell. She suffered a broken hip and the next day had surgery at the Natchez Community Hospital.
On January 30, 1995, Cheryl filed suit against Ronald and Bernice Poole and their homeowner's liability insurer, Economy Fire and Casualty Insurance Co., requesting damages and payment of her medical expenses. Specifically, Cheryl alleged in her petition that:
That the damages outlined herein were caused by the sole fault of the Pooles for having, owning and using a premise that is defective and unreasonably dangerous in the following non-exclusive manners:
a) Having, owning and using a washing machine that leaks soapy water; and
b) Having, owning and using a floor that is wet and unreasonably slippery.
The above described condition of the Pooles' premises renders the premises defective. Defendants are strictly liable for all defects in their premises.
Alternatively, petitioner shows that the injuries that she has sustained were caused by the negligence, carelessness, and failure to exercise due care by the Pooles herein in the following non-exclusive manners:
a) Owning, operating and using a washing machine when they knew or in the exercise of ordinary care should have known, that the washing machine leaked soapy water onto the floor of their premises;
b) Allowing soapy water to remain on the floor of their dining room and utility room area where they knew, or in the exercise of ordinary care should have known, people would be walking;
c) Failure to warn petitioner of the leaky washing machine and the presence of the soapy water on the floor of their premises;
d) Failure to remove the soapy water from the floor of their premises.
The defendants answered Cheryl's suit and denied liability. On September 19, 1995, the defendants filed a motion for summary judgment. Attached to the defendants' "Memorandum In Support Of Motion For Summary Judgment" were the depositions of Cheryl Finley Gray, Bernice Poole, and Ronald Poole. In response, Cheryl filed a "Memorandum In Opposition Of Motion For Summary Judgment" in which she attached her affidavit and the depositions of Bernice and Ronald Poole. Subsequently, the defendants filed a "Motion To Strike Affidavit" of Cheryl Finley Gray. On March 28, 1996, the trial court denied the defendants' request to strike Cheryl's affidavit, but granted the defendants' motion for summary judgment. The trial court stated in part that:
There are no disputed material facts, nor is there any necessity to make any evaluations of credibility of the evidence or witnesses, or of any of the admitted facts.
In reaching this decision, I have placed the burden of proof on the Defendants-Movers, and have considered all of the facts in the light most favorable to the Plaintiff. I have accepted Plaintiff's version of the events as set forth in her pleadings, affidavit, depositions and the exhibits. Nevertheless, as a matter of law, I cannot find that any of the material facts reflect any liability on the Defendant homeowner on either a theory of negligence or strict liability.
The most that this record shows is that the Plaintiff fell in the Defendant's home in the doorway of a utility room and suffered the injuries complained of. She produced no facts proving the cause of the fall. At most there is some speculation that the washing machine in the utility room may have leaked water onto the floor, and that the water may have been soapy and slippery. The washing machine had leaked in the past, mostly at the rear or exterior wall, and at one time there had been water immediately in the front of the washer, but this was not the area where Plaintiff fell.
*969 Cheryl appeals from that judgment and asserts that the trial court erred in granting the defendants' motion for summary judgment.

LAW

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991). Summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966[1]. Summary judgment should be used cautiously and sparingly, and any reasonable doubt should be resolved against the mover in favor of a full trial on the merits. Penalber v. Blount, 550 So.2d 577 (La.1989). But, the summary judgment is designed to avoid delay and expense of a trial on the merits and to enable the court to expedite disposition of a case when no genuine issue of material fact exists. Central Bank v. Simmons, 595 So.2d 363 (La.App. 2 Cir.1992).
To satisfy the burden that no genuine issue of material fact exists, the party moving for summary judgment must meet a strict standard showing that it is quite clear as to what the truth is, and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. Jackson v. Belleau, 94-1469 (La.App. 3 Cir. 6/7/95); 657 So.2d 478. In making this determination that the mover's supporting documents are sufficient to resolve all material factual issues in a motion for summary judgment, the mover's supporting documents must be closely scrutinized and the non-mover's documents indulgently treated. Taylor v. Oakbourne Country Club, 95-388 (La.App. 3 Cir. 10/4/95); 663 So.2d 379. If the mover's supporting documents are not sufficient to resolve all material factual issues, the summary judgment must be denied. Stevens v. Bernard, 95-1010 (La.App. 3 Cir. 1/31/96); 670 So.2d 264. However, if the mover's supporting documents are sufficient, the burden of proof shifts to the opposing party to present evidence showing that material facts still exist. Id. La.Code Civ.P. art 967 provides in part that:
[A]n adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
For purposes of summary judgment, facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of a legal dispute. Burris v. LaSalle Parish Police Jury, 95-696 (La.App. 3 Cir. 11/2/95); 664 So.2d 680. Whether or not a particular fact is material can be seen in the light of the substantive law applicable to the case. Moseley v. The Law Enforcement District of Avoyelles Parish, 95-1361 (La.App. 3 Cir. 3/6/96); 670 So.2d 745. In Washington v. State, Dept. Of Transp., 95-14 (La.App. 3 Cir. 7/5/95); 663 So.2d 47, 51, writ denied, 95-2012 (La.11/13/95); 664 So.2d 405, we stated:
[T]o uphold a trial court's grant of summary judgment, we must conclude that reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law based on the facts before the trial court. Thus, a grant of summary judgment is warranted if the unresolved facts do not present any triable legal issues. Although the question of whether a defendant's conduct constituted negligence is usually inappropriate for disposition by *970 summary judgment, a defendant is entitled to dismissal under this procedure if the record is devoid of any suggested basis to impose liability on the defendant after plaintiff was granted adequate time to develop its case by discovery. Similarly, summary judgment is appropriate when there are no material facts at issue and no legal duty exits.
(citations omitted).
LIABILITY
To prevail on a negligence claim under La.Civ.Code art. 2315[2], the plaintiff must prove by a preponderance of the evidence that: (1) defendant had a duty to conform his conduct to a specific standard (duty); (2) defendant failed to conform his conduct to the appropriate standard (breach of duty); (3) defendant's conduct was the cause-in-fact of plaintiff's injuries (cause-in-fact); (4) defendant's conduct was a legal cause of plaintiff's injuries (the risk and harm caused to plaintiff was within the scope of the protection afforded by the duty); and (5) plaintiff incurred actual damages (damages). Theriot v. Lasseigne, 93-2661 (La.7/5/94); 640 So.2d 1305; Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La.1993); Roberts v. Benoit, 605 So.2d 1032 (La.1991); Fowler v. Roberts, 556 So.2d 1 (La.1989). A negative answer to any of the above inquiries will result in the determination of no liability. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94); 646 So.2d 318.
A plaintiff seeking to recover under La.Civ.Code art. 2317[3] must prove by a preponderance of the evidence that: (1) the thing which caused his damage was in the custody of the defendant; (2) the thing had a condition that created an unreasonable risk of harm; and (3) the defective thing caused the plaintiff's injuries. Spott v. Otis Elevator Company, 601 So.2d 1355 (La.1992); Socorro v. City of New Orleans, 579 So.2d 931 (La. 1991); Morell v. City of Breaux Bridge, 94-1378 (La.App. 3 Cir. 5/31/95); 660 So.2d 882, writ denied, 95-2608 (La.1/12/96); 666 So.2d 321.
In Oster v. Dept. of Trans. & Development, 582 So.2d 1285 (La.1991), the Louisiana Supreme Court discussed the difference between negligence and strict liability:
In essence, the only difference between the negligence theory of recovery and the strict liability theory of recovery is that the plaintiff need not prove the defendant was aware of the existence of the "defect" under a strict liability theory. Under the negligence theory, it is the defendant's awareness of the dangerous condition of the property that gives rise to a duty to act. Under a strict liability theory, it is the defendant's legal relationship with the property containing a defect that gives rise to the duty. Loescher v. Parr, 324 So.2d 441, 446 (La.1976). Under both theories, the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant.
(footnote omitted).
Therefore, the owner of immovable property has a duty to take reasonable measures to protect against an unreasonable risk of harm or danger. Hebert v. Southwest Louisiana Electric Membership Corporation, 95-405 (La.App. 3 Cir. 12/27/95); 667 So.2d 1148, writs denied, 96-0277 (La.5/17/96); 673 So.2d 607, 96-0798 (La.5/17/96); 673 So.2d 608. In the inquiry, the court should consider a broad range of social, economic, and moral factors including defendant's cost of avoiding the risk and the social utility of plaintiff's conduct at the time of the accident. Tillman v. Johnson, 94-0480 (La.App. 1 Cir. 3/3/95); 652 So.2d 605; Townsend v. Westinghouse Elevator Corp., 25,966 (La.App. 2 Cir. 8/17/94); 641 So.2d 1022, writ denied, 94-2371 *971 (La.11/29/94); 646 So.2d 403; Celestine v. Union Oil Company Of California, 93-1330 (La.App. 3 Cir. 5/4/94); 636 So.2d 1138, writ granted, 94-1868 (La.11/11/94); 644 So.2d 660, affirmed, 94-1868 (La.4/10/95); 652 So.2d 1299. But, the mere fact that an accident or injury occurs is not proof that the thing presents an unreasonable risk of harm. Manuel v. Wal-Mart Stores, 93-1243 (La. App. 3 Cir. 5/4/94); 640 So.2d 579, writ denied, 94-1442 (La.9/23/94); 642 So.2d 1291; Matherne v. Somme, 94-55 (La.App. 5 Cir. 5/31/94); 638 So.2d 437, Hughes v. Green, 609 So.2d 991 (La.App. 4 Cir.1992), writ denied, 612 So.2d 82 (La.1993). Further, not every minor imperfection or defect in a thing will give rise to delictual responsibility. The imperfection of the thing must be of such a nature as to constitute a dangerous condition that would be reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. McBride v. Cracker Barrel Stores, Inc., 94-370 (La.App. 3 Cir. 11/2/94); 649 So.2d 465. A landowner is not an insurer against the possibility of an accident, the landowner must act as a reasonable person in view of the probability of injury to another. Lejeune v. Acadia Parish School Board, 517 So.2d 1030 (La.App. 3 Cir.1987).
As previously stated, the defendants' attached to their motion for summary judgment the deposition of Cheryl Finley Gray. Cheryl testified that, on the morning of the accident, she went to the Pooles' house at about 9:00 a.m. to visit with Bernice. Cheryl testified that when she arrived at Bernice's house, she took off her tennis shoes and placed them in the utility room near the kitchen. Cheryl also stated that when she arrived at the house, Bernice was "cleaning out her cabinets and she said she was waiting for the bug man to come to her house." Cheryl noted that Bernice had been mopping her kitchen floor. She then testified that Bernice then received a phone call. After the phone call, Cheryl continued, Bernice informed her that she needed to leave the house. Cheryl further testified that Bernice then asked her if she would wait at the house to let the bug man in. Cheryl said that Bernice left the house at around 10:15 a.m.
Cheryl testified that, after Bernice left the house, she began to mop the kitchen floor where Bernice had walked through. Cheryl acknowledged that she did not notice any water, dirt, or any other substance on the kitchen floor when she began to mop. Further, Cheryl indicated that she was wearing socks, short pants and a shirt. Cheryl stated that, after she finished mopping that area, she returned the mop next to the icebox in the kitchen. At that point, Cheryl testified that she "went back to the living room to sit" and was "waiting on the bug man to come." She stated that she waited for approximately thirty minutes to an hour; however, the bug man never came.
Cheryl stated that, around 11:00 a.m., she needed to leave Bernice's house to go check on her child, whom her mother was baby sitting. Cheryl testified that she left the living room and went into the utility room to retrieve her tennis shoes. She stated that she put on her tennis shoes in the doorway of the utility room. When asked what happened next, Cheryl replied:
I had leaned up against the [utility room] door to put my shoes on. And I.. I don't remember how I walked out. I just turned and walked out and when I got ... got midway of the door is when my feet slipped out from underneath me.
When Cheryl was asked to describe what happened after she fell, the following colloquy took place:
Q. All right. What did you notice about the floor after you fell? If anything.
A. I didn't notice anything.
Q. I mean, was it wet or dry?
A. I don't remember. I just remember hitting the floor and I laid there for a few minutes before I was able to even move. Get up.
Q. All right. After you sat there a few minutes and you ... and you got up, do you remember seeing anything on the floor?
A. No.
* * * * * *
Q. Okay. Do you have any idea as to what caused you to fall?

*972 A. At that time, no.
Q. You're sayingat that time. That makes it sound like that later on you....
A. No. Well, at the time, I just assumed it was a freak thing, I fell.
* * * * * *
Q. Now were you ever able later on to figure out what caused you to fall?
* * * * * *
A. No. I had talked to Bernice after I had got home from the hospital. After Mark Goldich had come to the house, I had talked to her and she said she had washed earlier that morning and the washing machine had leaked, you know, at different times. But she said she did not notice if it was wet that particular morning. And that's the onliest [sic] thing that possibly could figure out that why I could have fell.
* * * * * *
Q. Okay. And after you fell, your clothes, your shorts and your shirt, you don't recall them being wet.
A. No sir.
Q. And you don't recall seeing anything on the bottom of your tennis shoes after you fell.
A. No sir.
Q. When you arrived, do you remember if the washing machine or the dryer were in operation?
A. I don't remember.
Additionally, the defendants attached to their motion for summary judgment the deposition of Bernice Poole. Bernice testified that, on the morning of the accident, Cheryl came to visit her while she was cleaning her house. Bernice also stated that she had mopped her kitchen floor with clear water. Bernice further stated that she had never waxed or polished her kitchen floors. She testified that nobody had ever slipped in the kitchen or utility area previous to Cheryl's accident. Bernice admitted that her washing machine had been leaking water "from the drain in the back of it occasionally." But, she noted that the washing machine would only leak water "right directly in front of it." Bernice admitted that she was "sure" that she had washed clothes on the morning of Cheryl's accident. However, she testified that could not think of anything that would have caused the kitchen floor or the floor in the utility room to be slippery. Finally, attached to Bernice's deposition was a diagram of the Pooles' kitchen. The diagram revealed that the kitchen contained a dining room and, adjacent to the dining room, was the entrance to the utility room. The diagram also revealed that there was a washer and dryer inside the utility room.
Finally, the defendants attached to their motion for summary judgment the deposition of Ronald Poole. Ronald testified that nobody had previously slipped in the kitchen or in the utility room prior to Cheryl's accident. Ronald acknowledged that the washing machine in the utility room did leak water while in use. When Ronald was asked where the washing machine would leak, he answered:
The only, like I said, the only time I'd see leaking wasthe drain was in the wall between the washing machine and the porch, and it would leak down through the wall and it would be out on the porch. So I never did see water in front of the washing machine. It was always in the back of it and then on the front porch.
We conclude that the defendants met their burden of proving that they were entitled to summary judgment because the material facts establish no fault on behalf of the Pooles under a theory of strict liability or negligence. We agree with the trial court that, at the most, there is speculation that the washing machine in the utility room may have leaked water onto the floor; that the water may have been soapy and slippery; and that the washing machine had leaked in the past mostly at the rear wall and, at one time, immediately in front of the washing machine. But, defendants have presented specific facts that Cheryl did not fall in that area. Cheryl admitted that she slipped and fell mid-way through the utility room door. Further, Cheryl admitted in her deposition that she did not recall that her shorts and shirt were wet after the fall. Additionally, Cheryl admitted that she did not see anything on the bottom of her shoes after the *973 fall. Accordingly, we find that the defendants met their burden of proving that the floor in the kitchen and in the utility room did not present an unreasonable risk of harm to Cheryl. Once the defendants met their burden of proof that they were entitled to summary judgment, the burden of proof shifted to Cheryl to prove that there was still a triable issue of fact with respect to the floors in the kitchen and utility room.
Cheryl attached to her motion in opposition to summary judgment the depositions of Bernice and Ronald Poole. Also, Cheryl attached her affidavit, which stated in pertinent part:
On April 5, 1994, I was visiting the home of Bernice and Ronald Poole in Monterey, Louisiana, when Mrs. Poole was called to go out on an errand;
Mrs. Poole asked me to remain at her home so that I could let the bug spray man into her home and spray;
Bernice Poole left the residence through the back door at approximately 10:15 A.M. on that morning;
Mrs. Poole had mopped her kitchen floor earlier that morning before I arrived at her residence;
After Mrs. Poole walked out of her back door at approximately 10:15 A.M., I mopped her path from the kitchen to the back door with the damp mop that she had been using that morning;
I only mopped a narrow path from the kitchen to the back door, and I did not mop the area in the doorway of the utility room and, I did not mop in the utility room;
After I mopped, I then went into the Pooles' living room area and sat down for a period of approximately 45 minutes to wait for the bug spray man;
When the bug spray man did not arrive, I then walked into the utility room in my socks, as I had left my tennis shoes in the utility room when I arrived at the Pooles' residence that mornig [sic];
I leaned against the utility room door, which opened into the utility room and put my shoes on;
I then turned to walk out of the utility room, and when I got mid way of the utility room door, my feet slipped out from under me and I landed on the floor just outside of the utility room door;
My hip was broken and I was in a great deal of pain in my leg and hip and I did not notice whether there was any foreign substance on the floor, my clothes, or my tennis shoes;
I know that something on the floor caused it to be slippery and caused me to slip;
I know that I did not slip in my own mop water since I did not mop in the area where I slipped, and since the mop was only slightly damp when I used it, and the floor where I did mop had dried before I slipped;
We note that these are basically the same general allegations as in Cheryl's original petition. We further note, as did the trial court, that Cheryl produced no specific facts as to what caused her fall. There is only Cheryl's general allegation that she knew something was on the floor that caused it to be wet and slippery. Cheryl has not presented any specific facts that, if the washing machine was leaking on the day of the accident, that she walked or had placed her shoes directly in the area where the washing machine was leaking. We conclude that Cheryl has failed to set forth specific facts showing that there are any genuine issues of material fact in dispute that can be submitted for trial. Therefore, Cheryl has failed to show that the defendants were not entitled to summary judgment. Accordingly, we conclude that the trial court properly granted summary judgment in favor of the defendants.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiff-appellant, Cheryl Finley Gray.
AFFIRMED.
NOTES
[1] By Acts 1996, 1st Ex.Sess., No. 9, Article 966 of the Louisiana Code of Civil Procedure was amended effective May 1, 1996. Under this Article, as amended, summary judgment is now favored in the law. Summary judgment was granted in this case on March 28, 1996, but the case was submitted to this panel on September 30, 1996. However, because of our disposition in the present matter, we find it unnecessary to address the change in the law, nor resolve its applicability to this case.
[2] La.Civ.Code art. 2315 provides:

Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it.
Damages may include loss of consortium, service, and society and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
[3] La.Civ.Code art. 2317 provides in part:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.