# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-517


SUSAN SMITH

VERSUS

LAFAYETTE PARISH SHERIFF'S
DEPARTMENT, ET AL.


**\*\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 99-1313,
HONORABLE MARILYN CASTLE, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\*\***


## MICHAEL G. SULLIVAN
## JUDGE


**\*\*\*\*\*\*\*\*\*\*\***


Court composed of Billie Colombaro Woodard, Oswald A. Decuir, Marc T. Amy,
Michael G. Sullivan, and Billy H. Ezell, Judges.



**Woodard, J., dissents and assigns written reasons.**

**Ezell, J., dissents.**

                                                            **AFFIRMED.**


       **John H. Carmouche**
       **Donald T. Carmouche**
       **Victor L. Marcello**
       **Talbot, Carmouche & Marcello**
       **Post Office Box 759**
       **Gonzales, Louisiana  70707-0759**
       **(225) 644-7777**
       **Counsel for Plaintiff/Appellant:**
           **Susan Smith**

**William W. Goodell, Jr.**
**Post Office Box 52663**
**Lafayette, Louisiana  70505-2663**
**(337) 593-1263**
**Counsel for Plaintiff/Appellant:**
> **Susan Smith**

**L. Katherine A. Theunissen**
**Ward LaFleur**
**Mahtook & LaFleur**
**Post Office Box 3089**
**Lafayette, Louisiana  70502**
**(337) 266-2189**
**Counsel for: Defendants/Appellees:**
> **Sheriff Mike Neustrom**
> **Donald J. Breaux**

**Randall L. Kleinman**
**Hulse & Wanek**
**1010 Common Street, Suite 2800**
**New Orleans, Louisiana  70112-2401**
**(504) 524-6221**
**Counsel for Defendants/Appellees:**
> **Continental Casualty Company**
> **CNA Columbia Casualty Company**

**Ernest Randal Comeaux**
**In Proper Person**
**670 Bell Hill Road**
**Homer, Louisiana  71040-2150**
**Defendant/Appellee**

SULLIVAN, Judge.

Susan Smith[1] sued Randy Comeaux, former deputy of the Lafayette Parish Sheriff's Department (LPSD); former Lafayette Parish Sheriff, Donald J. Breaux, and current Lafayette Parish Sheriff, Mike Neustrom, as representatives of LPSD [2]; and Continental Casualty Company (Continental), LPSD's law enforcement liability insurer, seeking damages for being raped by Mr. Comeaux. LPSD and Continental filed motions for summary judgment which were granted by the trial court. Ms. Smith appeals. We affirm.

*Facts*

From the mid-1980's until the mid-1990's, a number of rapes occurred in the southern portion of Lafayette Parish and adjoining parishes which could not be solved. In late 1995, the Lafayette Police Department (LPD) developed a theory that the rapes were connected and could have been committed by the same person. In 1997, DNA testing revealed that semen samples from six rape scenes matched. At that point, LPD began looking for a serial rapist.

In September 1997, a task force was formed to attempt to solve these related rapes. The task force included LPD, LPSD, the Louisiana State Police, the FBI, and the University of Southwestern Louisiana, now University of Louisiana at Lafayette. Unsuccessful, the task force disbanded after approximately seven months. There were no new leads in the cases until November 1998 when an anonymous caller suggested to LPD Captain James Craft that Randy Comeaux, a detective in the LPSD Juvenile Division, should be investigated for the rapes. DNA testing on the butt of a cigarette smoked by Mr. Comeaux revealed that his DNA matched semen samples from six

---

[1]To protect her identity, Plaintiff used the pseudonym, Susan Smith, for these proceedings.

[2]For ease of discussion, references to LPSD include Sheriff Breaux, individually, and Sheriff Neustrom, as representative of LPSD.

rape scenes. After being arrested, Mr. Comeaux confessed to committing a number of rapes, including five rapes in Lafayette Parish on the following dates: November 2, 1986, November 15, 1987, November 16, 1992, August 29, 1994, and August 31, 1995. The November 2, 1986 rape occurred outside the city limits of Lafayette and was investigated by LPSD. The other Lafayette Parish rapes occurred within the corporate limits of the City of Lafayette and were investigated by LPD.

In her suit against LPSD, Ms. Smith alleged that Sheriff Breaux's hiring/retention policies were inadequate, that LPSD is vicariously liable for Mr. Comeaux's actions because he was in the course and scope of his employment with LPSD when he raped her; that LPSD's 1992 investigation of Mr. Comeaux, pursuant to a complaint by his girlfriend was conducted negligently; and that, if the investigation had been handled appropriately, he would have been discovered to be a rapist and incarcerated and, therefore, unable to rape her. After extensive discovery, briefing, and oral arguments, the trial court granted summary judgment in favor of LPSD and Continental. Ms. Smith appeals, assigning three errors: 1) the trial court's determination that Comeaux was not in the course and scope of his employment with LPSD when he raped her; 2) the trial court's determination that La.R.S. 9:2798.1 shields LPSD from liability for its hiring/retention policy; 3) the trial court's determination that LPSD's failure to investigate allegations of sexual deviancy of Mr. Comeaux did not result in Ms. Smith being raped.

### *Summary Judgment*

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. *Schroeder v. Bd. of Sup'rs of La. State Univ.*, 591 So.2d 342 (La.1991). The mover is entitled to judgment if the pleadings, depositions, answers to

2

interrogatories and admissions on file, together with supporting affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

### *Course and Scope of Employment*

Ms. Smith alleged in her petition that Mr. Comeaux was in the course and scope of his employment with LPSD when he raped her; therefore, LPSD is vicariously liable for his actions. She contends that the following factors dictate such a finding: 1) Mr. Comeaux's position as a detective for LPSD resulted in his being "on duty twenty-four hours a day, seven days a week," so her rape occurred when he would have normally been working; 2) Mr. Comeaux had "the authority and responsibility to take necessary police action with regard to all serious police matters brought to his attention while off duty;" 3) because no vehicle was registered in Mr. Comeaux's name, it is reasonable to surmise that he used a police vehicle assigned to him by LPSD; 4) Mr. Comeaux confessed to using a flashlight and gun during the rape which are items he used in his employment with LPSD; 5) he had access to computer records and files at LPSD which he likely used to obtain information regarding his victims before he raped them; 6) her expert witness opined that Mr. Comeaux believed he was furthering the business of LPSD when he raped her so that his actions were employment rooted.

In *LeBrane v. Lewis*, 292 So.2d 216, 218 (La.1974), the supreme court identified four factors to consider in determining whether the employer is liable for its employee's acts:

(1)  whether the tortious act was primarily employment rooted;

(2)  whether the violence was reasonably incidental to the performance of the employee's duties;

(3)  whether the act occurred on the employer's premises; and

3

(4)     whether it occurred during the hours of employment.

The court summarized the law on an employer's vicarious liability for an employee's intentional torts in *Russell v. Noullet*, 98-816, pp. 4-5 (La. 12/1/98), 721So.2d 868, 871 (footnote omitted), stating:

> The principle of vicarious liability is codified in La. Civ.Code art. 2320, which provides that an employer is liable for the tortious acts of its employees "in the exercise of the functions in which they are employed." While the course of employment test refers to time and place, the scope of employment test examines the employment-related risk of injury. *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96); 673 So.2d 994, 996, *citing Benoit v. Capitol Mfg. Co.*, 617 So.2d 477, 479 (La.1993). The inquiry requires the trier of fact to determine whether the employee's tortious conduct was "so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." *LeBrane v. Lewis*, 292 So.2d 216, 218 (La.1974).

We find the following factors important in our consideration of this issue: Mr. Comeaux was on vacation when he raped Ms. Smith; he did not wear a uniform, identify himself as an officer, or otherwise use his position as an officer to gain control over her; in his confession, he stated that the flashlight used in her rape was purchased by him at a nearby pharmacy immediately before the rape; LPSD required its officers to provide their own guns; in his confession, Mr. Comeaux revealed that he did not use the same weapon during every rape and that he owned more than one gun; there is no evidence that the gun used when he raped Ms. Smith was a gun he used in his work for LPSD; in his confession, Mr. Comeaux denied using LPSD computer records and files to select his victims, stating that he chose his victims randomly and that most of the rapes were "strictly opportunity" and committed spontaneously or within hours of his having spotted a potential victim. We further observe that there is no evidence that Mr. Comeaux believed he was furthering the business of LPSD when he committed a rape, so that they were in some way

4

employment rooted. In fact, his confession reveals that he knew his actions were wrong and extremely harmful to his victims.

Mr. Comeaux's actions were purely personal and totally unrelated to his employment with LPSD. Accordingly, the trial court correctly concluded that LPSD is not vicariously liable for his actions.

### *LPSD's Hiring Policies*

Ms. Smith contends that LPSD should have used psychological testing and/or a polygraph examination in 1984 to evaluate potential and existing LPSD employees' fitness for duty. She further urges that its failure to implement these screening tools resulted in her being raped by Mr. Comeaux and constituted "legal fault or negligent conduct." The trial court held that, pursuant to La.R.S. 9:2798.1, Sheriff Breaux's hiring policy was a policymaking or discretionary act for which he cannot be held liable.

La.R.S. 9:2798.1 provides:

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

Mr. Comeaux went to work for LPSD in 1979. At that time, Carlo Listi was sheriff. Sheriff Breaux took office in 1984. He made existing LPSD employees re-apply for employment and adopted a hiring/retention policy which included criminal background checks, previous employment checks, review of employee records for then-current LPSD employees, and interviews of LPSD personnel. Thereafter, periodic employee reviews were conducted on all employees. Mr. Comeaux's performance reviews were all favorable, and many rated his work very high.

Ms. Smith asserts that the use of polygraph examinations and psychological testing was a standard practice for law enforcement agencies when Sheriff Breaux was

5

in office and that his failure to employ these tools was negligent. Citing *Fowler v. Roberts*, 556 So.2d 1 (La.1990), she argues that the trial court's interpretation of La.R.S. 9:2798.1 was erroneous, alleging that La.R.S. 9:2798.1 "does not protect against legal fault or negligent conduct at the operational level, but only confers immunity for policy decisions , i.e., decisions based on social, economic, or political concerns."

In *Gregor v. Argenot Great Central Insurance Co.*, 02-1138, p. 7 (La. 5/20/03), 851 So.2d 959, 964, the supreme court held that the object of La.R.S. 9:2798.1 "is to provide immunity from liability for offenses and quasi offenses of public entities, as defined therein, when the acts or omissions of the public entities are policymaking or discretionary acts or omissions." In doing so, the court found its interpretation of La.R.S 9:2798.1 in *Fowler* "fatally flawed." *Id*. at 967. In *Fowler*, the supreme court compared La.R.S 9:2798.1 with the Federal Tort Claims Act (FTCA), found them essentially the same, then used the analysis employed in FTCA cases to decide the issue presented therein. In *Gregor*, the supreme court found this comparison inappropriate because the language of the two provisions "*is not essentially the same,*" noting "[u]nlike the Louisiana statute, the federal statute does not provide that a 'policymaking act' is separate and distinct from a 'discretionary function or duty.'" *Id.* The supreme court rejected *Fowler's* determination that immunity "only exists when there is a discretionary act or function 'grounded in social, economic or political policy'" because the phrase does not appear in La.R.S. 9:2798.1. *Id*. Lastly, the court pointed out that La.R.S. 9:2798.1 "does not make a distinction between *operational acts* and *ministerial* or *policymaking acts*." *Id*.

At issue in *Gregor* was the Department of Health and Hospitals' inspections of eating establishments to insure that they complied with warning requirements adopted

6

by the agency regarding the ingestion of raw oysters. After reconsidering and rejecting *Fowler's* interpretation of La.R.S. 9:2798.1, the supreme court determined that DHH's duty to enforce the sanitary code was mandatory and that its failure to properly train its sanitarians to comply with its own regulations was not within the purview of La.R.S. 9:2798.1, but was "operational negligence in enforcing the sanitary code." *Id.* at 968.

Sheriff Breaux established a hiring/retention policy when he took office which was within the course and scope of his lawful powers and duties. LPSD followed the policy when Mr. Comeaux applied to retain his position with LPSD. No statutes, regulations, or other legal requirements directed the hiring of law enforcement employees. Therefore, Sheriff Breaux's hiring/retention policy was a discretionary act, and liability cannot be imposed on LPSD for its application of the policy.

### LPSD's Internal Investigation of Comeaux

In April 1992, Judy Hedgcoth, Mr. Comeaux's ex-girlfriend, filed a complaint with LPSD, alleging that he had physically abused her approximately two months earlier. LPSD commenced an internal investigation of Ms. Hedgcoth's complaint. During the investigation, Ms. Hedgcoth also asserted that Mr. Comeaux should not be in the juvenile division because he was a "sex addict" and was sexually perverted. LPSD's Internal Affairs Division (IAD) investigated Mr. Comeaux's alleged battery of Ms. Hedgcoth but not his alleged sex addiction and sex perversion because the battery was the only allegation of criminal conduct. The investigation was determined to be inconclusive, and no action was taken against Mr. Comeaux.

Ms. Smith asserts that, because of Ms. Hedgcoth's claims regarding Mr. Comeaux's sexual addiction, LPSD should have required him to undergo psychological testing and/or a polygraph examination, claiming that these measures

7

would have resulted in his being *investigated and arrested for unsolved sex crimes*, specifically the November 2, 1986 rape investigated by LPSD. Further, she alleges that LPSD's failure to require this testing was negligent and resulted in her being raped two years later.

> To prevail on a negligence claim under La.Civ.Code art. 2315, the plaintiff must prove by a preponderance of the evidence that: (1) defendant had a duty to conform his conduct to a specific standard (duty); (2) defendant failed to conform his conduct to the appropriate standard (breach of duty); (3) defendant's conduct was the cause-in-fact of plaintiff's injuries (cause-in-fact); (4) defendant's conduct was a legal cause of plaintiff's injuries (the risk and harm caused to plaintiff was within the scope of the protection afforded by the duty); and (5) plaintiff incurred actual damages (damages). *Theriot v. Lasseigne*, 93-2661 (La.7/5/94); 640 So.2d 1305; *Faucheaux v. Terrebonne Consolidated Government*, 615 So.2d 289 (La.1993); *Roberts v. Benoit*, 605 So.2d 1032 (La.1991); *Fowler v. Roberts*, 556 So.2d 1 (La.1989). A negative answer to any of the above inquiries will result in the determination of no liability. *Mathieu v. Imperial Toy Corp.*, 94-0952 (La.11/30/94); 646 So.2d 318.

*Gray v. Economy Fire & Cas. Ins. Co.*, 96-667, pp. 6-7 ( La.App. 3 Cir. 11/6/96), 682 So.2d 966, 970 (footnote omitted).

"Whether a duty is owed is a question of law." *Hardy v. Bowie*, 98-2821, p. 12 (La. 9/8/99), 744 So.2d 606, 614. Duties are often imposed on governmental agencies as a result of the services they perform, and a breach of such a duty may result in the imposition of liability for damages that result from that breach. *Id.* "The determination of whether a particular duty should be imposed on a particular governmental agency is a policy question." *Id.*

> Generally, a "police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action." *Prattini v. Whorton*, 326 So.2d 576 (La.App. 4th Cir. 1976); *Justin v. City of New Orleans Through Morial*, 499 So.2d 629, 631 (La.App. 4th Cir. 1986), *writ denied*, 501 So.2d 232 (La.1987). "His authority must at all times be exercised in a reasonable fashion and he must act as a reasonably prudent man under the circumstances." *Id.* Officers are held to choosing a course of action which is reasonable under the circumstances. *Mathieu, supra* at 325.

*Id.*

The investigation revealed the following pertinent information. When Ms. Hedgcoth complained to LPSD, Mr. Comeaux and Ms. Hedgcoth had known each other for four years and had been living together for two and one-half to three years. They were having difficulties in their relationship and were actually in the process of separating. When Ms. Hedgcoth met with IAD investigators, she could not remember the date, nor even the month, of Mr. Comeaux's alleged abuse. She admitted that on at least one occasion she spit in his face in anger. She referenced documentation of her allegations of sexual perversion but could not produce the documents. She also stated that she had shared the information with another person but would not provide that person's name to the investigators.

Ms. Hedgcoth suffered from alcoholism and drug addiction which contributed to the breakup of the relationship. Mr. Comeaux related that she exhibited rage, depression, and irrational behavior at times during their relationship and that she was abusive to him on occasion. He admitted hitting her as she alleged, explaining that it was in self-defense. He stated she had threatened to kill him on more than one occasion as she aimed a gun at him. All reports from third persons contacted for the investigation indicated that Mr. Comeaux had been supportive of Ms. Hedgcoth and her children throughout their relationship and had helped her get treatment for her alcohol and drug addictions. An officer of the St. Martin Parish Sheriff's Department (SMPSD), who was married to Mr. Comeaux's first cousin, also told investigators that he had never seen any signs of abuse and that Ms. Hedgcoth, a former employee of SMPSD, was not reliable or credible and was known to fabricate.

This information must be considered from LPSD's perspective. At the time LPSD investigated Ms. Hedgcoth's complaints, Mr. Comeaux had a thirteen-year

9

history with LPSD which was, for the most part, very positive. While IAD had investigated three other complaints against him, none were of a sexual nature. More importantly for purposes of Ms. Smith's claims, at the time of LPSD's investigation, only two of the rapes committed by Mr. Comeaux had been committed and investigated. Of those two rapes, only the November 2, 1986 rape had been investigated by LPSD. The other rape, which occurred on November 15, 1987, had been investigated by LPD and that information was not shared by LPD with LPSD until late 1995. Thus, LPSD knew only of the November 2, 1986 rape, and it had occurred almost five and one-half years before Ms. Hedgcoth's complaint.

As a law enforcement agency, LPSD had a duty to reasonably insure public safety. *Rielly v. Town of Church Point*, 96-2 (La.App. 3 Cir. 5/8/96), 673 So.2d 1348. Accordingly, it had a duty to perform its investigation of Mr. Comeaux in a reasonable manner and to act reasonably as a result of the information obtained during the investigation. *Hardy,* 744 So.2d 606. LPSD's investigation of Ms. Hedgcoth's claims was reasonable in light of the information obtained as a result of the investigation.

In opposition to Defendants' motions for summary judgment, Ms. Smith submitted affidavits of a former police chief and a licensed clinical psychologist/ neuropsychologist who provides fitness for duty evaluations and officer candidate screenings for police agencies. We do not address the affidavit of the former police chief because it does not accurately reflect the facts of this case and the information possessed by LPSD's IAD when it investigated Ms. Hedgcoth's complaint.

The psychologist averred in his affidavit that psychological testing would more probably than not have revealed that Mr. Comeaux had a "personality disorder[], propensity to violence and sexual addiction disorder[], and . . . psychological disorder[] . . . typical of a serial rapist like Randy Comeaux, or that he was evading

detection and should be suspended from duty pending further psychological and criminal investigation." The expert also averred that as a result of psychological testing it is "[m]ore probable than not, I also would have recommended an immediate investigation into Randy Comeaux as a potential sex offender because of the clear danger presented by a less than sexually healthy officer in such a position of trust."

In 1982, Mr. Comeaux applied for employment with LPD and had to undergo psychological testing and a polygraph examination. His psychological testing was interpreted as normal and, even though his polygraph examination indicated that he had not been completely truthful in answering two questions regarding having stolen anything of value and truthfulness on his application, he completed the screening process, including a personal interview, and was approved for employment. The only reason he did not go to work for LPD was a negative report regarding his back from the physician who conducted his physical. For these reasons and the reasons set forth in our discussion above, this affidavit does not change our conclusion that LPSD's actions regarding its investigation of Mr. Comeaux were reasonable.

### *Decree*

The trial court's grant of summary judgment is affirmed. All costs of this appeal are assessed to Susan Smith.

**AFFIRMED.**

NUMBER 03-517

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

SUSAN SMITH

     Plaintiff - Appellant

Versus

LAFAYETTE PARISH SHERIFF'S
DEPARTMENT, ET AL.

     Defendants - Appellees

On appeal from the Fifteenth Judicial District Court [No. 99-1313], for the Parish of Lafayette, State of Louisiana; the Honorable Marilyn C. Castle, District Judge, presiding.

Woodard, J., dissenting.

Generally, I dissent from the majority's decision because it reviewed and affirmed this summary judgment as if it were a trial on the merits, not a summary judgment proceeding, sanctioning the trial court's credibility determinations and weighing of the evidence, which our rules, governing summary judgment proceedings, do not permit.

More specifically, Susan Smith asserted three theories for recovery. However, for her to prevail in this summary judgment proceeding, she needed to show that there is a genuine issue of material fact in dispute concerning, only, one of them. She has done so regarding whether LPSD breached its duty to reasonably investigate Ms. Hedgcoth's alarming complaints against Randy Comeaux. "Breach" is the only issue before us, as both sides agree that LPSD had a duty to conduct a reasonable investigation, and our supreme court has advised that a plaintiff need not prove causation on summary judgment.[1]

---

[1] *Estate of Adams*, 775 So.2d at 1064.

1

Thus, while I agree that Mr. Comeaux was not in the course and scope of his employment with LPSD when he raped Ms. Smith and that La.R.S. 9:2798.1 shields LPSD from liability for its hiring/retention policy, the record is replete with material facts in dispute, regarding the reasonableness of LPSD's "investigation," which a jury could find constituted a breach of LPSD's duty. In fact, the trial court recognized its parameters of authority at the hearing on the Defendants' motion for summary judgment:

> [I'm not] debating . . . the merits of the investigation. . . . I think we have to set it aside. Because, otherwise, it can't be decided in the terms of summary judgment. Because *there are factual issues about how an investigation occurred. And that's not appropriate for me to resolve on summary judgment.*

(Emphasis added.) Notwithstanding, the trial court did not apply these precepts. And, it required Ms. Smith to prove causation; i.e., that LPSD's breach caused her rape.

Although, likewise, the majority required Ms. Smith to prove that LPSD's failure to reasonably investigate Mr. Comeaux caused her to be raped, our Supreme Court has instructed us that "causation is an issue of fact" that is generally reserved for determination at a trial on the merits. [2] As such, neither the trial court nor the majority should usurp the trier of fact's obligation to determine whether Ms. Smith proved causation.[3] Moreover, in the instant case, Ms. Smith would be able to present evidence at a trial on the merits from which the trier of fact could reasonably conclude that she met her burden of proving that IAD's "investigation" was "more probably than not" inadequate and, hence, was a substantial factor in bringing about her harm—being raped.[4]

Since material facts are disputed concerning whether the "investigation" was unreasonable and whether this breach was a substantial factor in bringing about Ms. Smith's harm, a fact finder must make credibility determinations and weigh the evidence, neither of which the law permits a judge to do on summary judgment. Thus,

---

[2]*Id.*

[3]*See Id. See also Parker v. Harper*, 01-548 (La.App. 3 Cir. 10/31/01), 803 So.2d 76.

[4]*Lazard v. Foti*, 02-2888 (La. 10/21/03), 859 So.2d 656.

2

I disagree with the majority's affirmation permitting the trial court to do so in the instant case, particularly regarding her third theory of recovery.

Namely, to resolve the "breach" question, the majority analyzes the evidence from LPSD's point of view, narrowing its focus to Ms. Hedgcoth's credibility and on a couple of Ms. Smith's arguments—that psychological testing and a polygraph examination, probably, would have led to Mr. Comeaux's arrest and, therefore, would have prevented him from raping her.

However, I submit that if we take the record as a whole, as we should, and do not exclude parts of Ms. Smith's evidence, even when we analyze this case from LPSD's perspective and take into account its belief that Ms. Hedgcoth lacked credibility, still, a trier of fact could conclude that Ms. Smith had met her burden of proof for summary judgment purposes.

The record as a whole reveals that Ms. Hedgcoth provided LPSD with enough independently verifiable information to show that if it had conducted even a basic, "bare-bones" investigation, without cross-referencing fingerprints, without performing a polygraph, and without conducting psychological testing, a jury could conclude that the trail that LPSD would have had to logically follow, probably, would have led to Mr. Comeaux's arrest. Indeed, the record shows that, later, when Mr. Comeaux was confronted with evidence, he actually confessed.

Just some of the distressing information that Ms. Hedgcoth provided LPSD which a jury could have believed it should have pursued, aggressively, includes that: (1) Mr. Comeaux (an LPSD detective entrusted with the duty to "investigate" sex crimes against juveniles and ensure their protection) acquired sexual gratification from watching interviews of sexually abused children; (2) she caught him masturbating to a videotape, which he took home from work, of an interview of a nine-year-old girl whose case he was investigating; and (3) **he described himself, in writing, as "powerless over the fact that when he saw a beautiful woman, he wanted to rape her violently."** (Emphasis added.)

She gave law enforcement the video to which she claimed he had masturbated.

She advised law enforcement that Mr. Comeaux needed to go to Bill Leach for counseling after his psychiatrist, Dr. Dupuis, diagnosed him as a sex addict; that he needed Lithium (an anti-psychotic drug) to control his sexual desires; and "Randy's problems were so severe that [Bill Leach] wanted to hospitalize him. But because of his job he was unable to do that."

3

Mr. Comeaux confirmed that he was taking Lithium and that he had gone to counseling, and when IAD asked him where Mr. Leach was and if it could reach him for verification, he answered:

> A:      Bill's in [the] Priesthood [in] Massachusetts.
>
> Q:      So there's no way for us to contact him at all.  Is there any way for us to contact him to verify what you're telling us is the truth?
>
> A:      Uh, **there would be.  You could check probably with the Diocese of Lafayette**.

(Emphasis added.)

Yet, the record does not indicate that IAD ever tried to contact, either, Mr. Leach or Dr. Dupuis to verify whether any of the information Ms. Hedgcoth had provided was true.  A jury could conclude that this was unreasonable and that had it done so, more probably than not, it would have discovered the information Mr. Comeaux had provided them about his sexual addiction, as well as his own writings to that effect.

Additionally, Ms. Hedgcoth advised law enforcement of Mr. Comeaux's notebook where he kept these writings, in which he threatened to take her life and detailed the nature of his sexual perversions.

> "It was a 12-Step Program for . . . sex addicts.  . . . Randy stated that he was powerless over the fact that when he saw a beautiful woman, he wanted to rape her violently.  . . .  That he could not keep his eyes off of a woman's breast and vagina . . . when he walked down the street. [H]e stated when he saw a beautiful woman he often fantasized [about] stealing her underwear from her home. [W]hen he passed a washateria he would want to rush in there and steal women's panties out of the drier."

Ms. Hedgcoth, also, advised law enforcement that when she confronted Mr. Comeaux with this information:  "Randy got very angry.  He busted my lip.  I had to go to the hospital."

She advised law enforcement that he kept "photographs of children, taken from **past** cases he has worked, in his desk drawer."  (Emphasis added.)

4

She described a conversation that she had with Lieutenant Pete Hebert, before IAD's "investigation," about Mr. Comeaux's sexual problems. She claimed that when Lieutenant Hebert had called her, she said: "Randy went to you a while back and he asked to get out of Juvenile. He was told [by his counselor] to get out of juvenile." He did not need to hear the sexual content of what was going on in these cases. It's not healthy for him. . . . **Pete said something like he remembers that**." (Emphasis added.)

All of the above were pieces of evidence, whose assessment was not dependent upon Ms. Hedgcoth's credibility. IAD could have easily verified them independently. Yet, nothing in the record indicates that it ever spoke with Lieutenant Hebert; attempted to obtain Ms. Hedgcoth's or Mr. Comeaux's medical records; or attempted to obtain Mr. Comeaux's consent to search or a warrant to search his residence for any of these physical items. Therefore, a jury could conclude that by failing to verify these pieces of evidence independently it breached its duty to perform a reasonable investigation and that had it done otherwise, more probably than not, the trail of uncovered evidence would have led it to Mr. Comeaux's guilt and ultimate arrest.

Additionally, a jury could conclude that IAD's "investigation" was unreasonable on its face because it did not, even, ask Mr. Comeaux basic questions and that the tone and leading nature of its questioning of him did not demonstrate a pro-active intent to uncover the truth:

Q: **Without going into anything that's too personal**, uh, as long as you take your medication, are you uh, considered stable and so forth?

Q: So it's not like you're trying to keep her [at your apartment] is that right?

Q: So you, you're not . . . You didn't threaten that if she left that you would do her harm or anything like that?

Q: So you're ready for her to get, [sic] get away from you?

(Emphasis added.)

Notably, during its twenty-six minute interview of Mr. Comeaux, IAD never asked him about Ms. Hedgcoth's allegations of sexual misconduct. A jury could find

5

that this was unreasonable, given that these were the allegations it was supposed to be investigating.

Although Ms. Smith need not prove, in this summary judgment proceeding, that law enforcement should have cross-referenced finger-prints, a jury could conclude that after LPSD received IAD's final report, even given LPSD's disbelief of Ms. Hedgcoth, it should have, at least, cross-referenced Mr. Comeaux's fingerprints with those obtained from the scene of any unsolved crimes, including rapes, to ensure that he was not involved in any criminal activity and that had it done so, more probably than not, it would have discovered that his fingerprints matched those lifted from the scene of an unsolved rape he committed in 1986, approximately eight years before he raped Ms. Smith in 1994. It was exactly this type of cross matching of fingerprints that, ultimately, led to his confession and arrest in 1999.

Failure to cross-reference fingerprints notwithstanding, a jury could conclude that there were obvious, serious gaps in IAD's final report which LPSD's sheriff should not have accepted and, thus, it could hold LPSD accountable for Ms. Smith's harm.

Therefore, since Ms. Smith has shown the existence of countless genuine issues of material fact in dispute in this summary judgment proceeding, concerning whether LPSD breached its duty to conduct a reasonable investigation of a possible dangerous sexual deviant, investigating sex crimes against juveniles, it was inappropriate for the majority to affirm the trial court's credibility determinations and weighing of the evidence, and a reversal of its summary judgment grant is warranted.