815 So.2d 393 (2002)
Henry DORTY
v.
CITY OF PINEVILLE, et al.
No. 01-1470.
Court of Appeal of Louisiana, Third Circuit.
April 3, 2002.
*394 Howard N. Nugent, Jr., Nugent Law Firm, Alexandria, LA, for Plaintiff/Appellee Henry Dorty.
John Albert Ellis, L. Dept. of Justice, AAG, Alexandria, LA, for Defendant/Appellant State of LA., DOTD.
Randall Brian Keiser, Keiser & Auzenne, Alexandria, LA, for Defendant/Appellant City of Pineville.
Court composed of SYLVIA R. COOKS, MARC T. AMY, and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
The defendant, the City of Pineville, appeals the judgment of the trial court finding it at fault and liable for damages to the plaintiff, Henry Dorty. For the following reasons, we amend in part and reverse in part.

FACTS
At 7:50 a.m., on December 28, 1997, Officer Paul Edmonds, of the Pineville Police Department, was dispatched to a one-vehicle accident on the top of the Pine Street overpass of U.S. Highway 167, the Pineville Expressway, in Pineville, Louisiana. He arrived at the accident scene at 7:52 a.m., only to discover that there was ice on the overpass. He allowed his police car to slide to a stop on the left side of the two-lane southbound lane, right in front of the vehicle which was involved in the accident and was owned by Terry Perry. Perry's vehicle had spun out of control due to the ice before coming to rest facing northwards in the right lane of the southbound lane on the top of the overpass. Officer Edmonds' and Perry's vehicles blocked both lanes of travel. After Officer Edmonds exited his police car, another vehicle, driven by Dwayne Taylor, stopped safely in front of their vehicles. Within a minute of Officer Edmonds' arrival at the scene, and while he was checking Perry and his passenger for injuries, a vehicle driven by Dorty struck the rear of Taylor's vehicle. Officer Edmonds reported this accident to the dispatcher at 7:52 a.m.
Dorty filed suit against Pineville, Edmonds, and Perry and his insurer, Lyndon Property Insurance Company.[1] Pineville answered and filed a third party demand, naming as third party defendants the State of Louisiana, through the Department of Transportation and Development, Perry, and Lyndon Property. Following a trial on the merits, the trial court rendered judgment finding Pineville and Officer Edmonds fifty percent at fault, Perry twenty-five percent at fault, and Dorty twenty-five percent at fault in causing the accident. It further dismissed Pineville's third party demand against the State with prejudice. This suspensive appeal by Pineville followed.

ISSUES
Since we find merit in Pineville's first assignment of error, we will only address *395 that issue. Pineville argues that the trial court erred in finding Officer Edmonds fifty percent at fault since he failed to halt southbound traffic at the bottom of the overpass.

STANDARD OF REVIEW
A trial court's findings of fact are subject to the "manifest error" or "clearly wrong" standard of review. Rosell v. ESCO, 549 So.2d 840 (La.1989). However, when the issue is a question of law, the appellate court simply determines whether the trial court's decision is legally correct or incorrect. Scobee v. Brame, 98-564 (La.App. 3 Cir. 10/28/98), 721 So.2d 977, writ denied, 98-2952 (La.1/29/98), 736 So.2d 833.
In this instance, we find that the trial court held Officer Edmonds to the standard of ordinary negligence, thus, it applied the wrong standard of care in determining that he breached the duty he owed to Dorty. The proper standard to apply in this instance was gross negligence; whether Officer Edmonds' actions constituted a reckless disregard for the safety of others, pursuant to La.R.S. 32:24. We will now conduct a de novo review of the record and render a judgment on the merits.
In Syrie v. Schilhab, 96-1027, pp. 4-5 (La.5/20/97), 693 So.2d 1173, 1176-77, the Supreme Court set out the duty-risk analysis used to determine whether liability exists:
Under this analysis, plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of the protection afforded by the duty breached. Berry v. State, Through Dept. of Health and Human Resources, 93-2748, p. 4 (La.5/23/94), 637 So.2d 412, 414; Mundy v. Dept. of Health and Human Resources, 620 So.2d 811, 813 (La.1993). Under the duty-risk analysis, all four inquires must be affirmatively answered for plaintiff to recover. Mathieu v. Imperial Toy Corp., 94-0952, p. 4 (La.11/30/94), 646 So.2d 318, 322.
In addressing the duty owed by the state trooper in that case to the plaintiffs, the Supreme Court stated:
We stated in Blair v. Tynes, 621 So.2d 591, 596 (La.1993), that the legislature has given law enforcement officers the exclusive power to regulate traffic and the public has a corresponding obligation to follow traffic regulations. Law enforcement officers are duty bound to exercise this power reasonably to protect life and limb and to refrain from causing injury or harm. When a law enforcement officer becomes aware of a dangerous traffic situation, he has the affirmative duty to see that motorists are not subjected to unreasonable risks of harm. Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672, 675 (La.App. 3d Cir.1991). In Mathieu, 94-0952 at 10, 646 So.2d at 325, this court stated that the scope of an officer's duty is to choose a course of action which is reasonable under the circumstances. In other words, the scope of an officer's duty to act reasonably under the circumstances does not extend so far as to require that the officer always choose the "best" or even a "better" method of approach.
La.R.S. 32:24 provides exceptions to traffic regulations for emergency vehicles:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not *396 upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated:
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
This statute was recently interpreted by the Supreme Court to provide that the driver of an emergency vehicle, whose actions fit within Subsections A, B, or C of La.R.S. 32:24, would only be held liable if his actions constituted a reckless disregard for the safety of others. Lenard v. Dilley, 01-1522 (La.1/15/02), 805 So.2d 175. Reckless disregard was held to be commensurate with gross negligence. Id. On the other hand, if the driver's actions failed to fit within any of the Subsections, then he would only be held to the standard of due care or ordinary negligence. Id.
Officer Edmonds testified that he was dispatched to a one-vehicle accident at the top of the Pine Street overpass on December 28, 1997, at 7:50 a.m. As he reached the bottom of the overpass, he stated that he could see Perry's vehicle at the top of the overpass, facing towards him. He stated that he only learned that the overpass was iced over when his police car began sliding. He stated that he took his foot off the gas and allowed his vehicle to slide to a stop in the left lane of the two-lane southbound lane, right in front of Perry's vehicle. Officer Edmonds stated that, once he hit the ice, he did not wish to risk moving his vehicle, so he left it parked in the left lane, which, along with Perry's vehicle, blocked both southbound lanes. He stated that his first concern upon arriving at the scene was to determine whether Perry or his passenger (Perry's brother) was injured.
Officer Edmonds informed the dispatcher that he had arrived at the accident scene at 7:52 a.m. While he was checking for injuries, Taylor approached, but was able to stop his vehicle right behind the two parked vehicles. Officer Edmonds stated that he waived his arms to indicate the driver should slow down. He further stated that the blue lights on the top of his vehicle were on and the yellow vector lights in the back of his vehicle were flashing. Immediately afterwards, Taylor's vehicle was struck in the rear by Dorty's vehicle. This second accident was also reported by Officer Edmonds to the dispatcher at 7:52 a.m.
Officer Edmonds testified that he did not park his police car at the foot of the overpass because he wished to reach Perry's vehicle as quickly as possible in order to assess for injuries. Had he parked his vehicle there, he stated that he would have *397 had to walk approximately two hundred feet in order to reach the top of the overpass. He further testified that, approximately one minute from the time he reached the scene, the second accident occurred. Thus, he had no opportunity to take any action in stopping oncoming traffic. Officer Edmonds stated that he could see the accident scene from the bottom of the overpass, and that a prudent driver should have seen his emergency lights.
Perry testified that he lost control of his vehicle as he approached the Expressway. He stated that his vehicle began sliding and spinning, and that it first hit the right side of the overpass railing and then the left side, before coming to rest in the right-hand lane, facing the direction he had just come from. He testified that the front of his vehicle was crushed as a result of the accident and would not start. Although he testified that he could not remember much about the accident, Perry stated that three to four vehicles were able to safely pass his vehicle while he was waiting for the police's arrival. From his vantage point on the top of the overpass, he stated that he could see both northwards and southwards, and that there was nothing to prevent a driver from seeing his vehicle. Although he could not recall at trial whether the police car's emergency lights were on, he admitted testifying in his deposition that they were.
Dorty testified that he had just entered the Expressway in the right lane of the southbound lane, from a ramp located near Louisiana College. He testified that he was traveling approximately thirty-five to forty miles per hour, and that he traveled from the bottom to the top of the overpass before striking Taylor's vehicle. Dorty testified that he could not see the vehicles at the accident scene until he reached the top of the overpass. He stated that Officer Edmonds was in front of his vehicle talking to Perry, that Perry's vehicle was in the outside or right lane, and that Taylor's vehicle was straddling the right and left lane, pointed to the left. Dorty stated that he applied his brakes before the impact, but that his vehicle slid between twenty to thirty feet on the ice before striking Taylor's vehicle. He testified that the weather was clear and cold.
Considering the testimony and the evidence, we find that Officer Edmond was responding to an emergency call and that his emergency lights were on at the time of the accident. Thus, he will only be liable to Dorty if we find that his actions constituted a reckless disregard for the safety of others. Based on the facts of this case, we find that his actions did not approach the standard of gross negligence. Accordingly, he was not at fault in causing the accident nor is Pineville liable to Dorty for the injuries he suffered. Officer Edmonds had just arrived at the scene of the accident and his first concern was to determine whether anyone was injured. He did not learn that there was ice on the overpass until his car started sliding, and, that once it came to a rest, he was afraid to move it again because of the ice. The evidence further showed that he was only at the scene of the accident approximately one minute before the accident at issue occurred. Thus, we find that there was insufficient time for Officer Edmonds to take any further action and his actions were reasonable under the circumstances. Although a better method might have been for him to park his police car at the bottom of the overpass, Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318, does not require that he choose the better method, only that he choose one which is reasonable under the circumstances. We find that he did.
*398 Since Officer Edmonds did not breach the duty he owed Dorty, we find that neither he nor Pineville is liable to him. The judgment of the trial court finding Pineville fifty percent at fault in causing the accident is reversed.
We further find that seventy-five percent of the fault should be assessed to Dorty. The evidence showed that three to four vehicles were able to safely maneuver around Perry's vehicle before Officer Edmonds arrived, and that both he and Taylor were able to safely stop despite the ice on the roadway. Additionally, Officer Edmonds testified that he could see the accident from the bottom of the overpass as he approached the scene. "[A]n approaching motorist has the duty to discover a stalled vehicle, if he can do so with the exercise of the required degree of care, and even if the obstruction is illegal, motorists are not excused from exercising the required degree of care in observing the stalled vehicle." Desadier v. Safeway Ins. Co., 97-1412, pp. 6-7 (La.App. 3 Cir. 4/8/98), 712 So.2d 925, 929, writ denied, 98-1249 (La.6/26/98), 719 So.2d 1058. Accordingly, we find that Dorty breached his duty to drive in a prudent manner, and that he was seventy-five percent at fault in causing this accident. The judgment of the trial court, finding Dorty 25% at fault and causing the accident will be amended to increase his fault to 75%.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed insofar as it finds the City of Pineville at fault. Accordingly, the judgment of the trial court is amended to increase the fault of Dorty from 25% to 75%. The costs of this appeal are assessed to the plaintiff-appellee, Henry Dorty.
AMENDED IN PART AND REVERSED IN PART.
NOTES
[1] Lyndon Property was later dismissed from the suit on a partial judgment of dismissal, due to the fact that Perry's insurance policy had lapsed on November 25, 1997.