STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-941


ROBBIE L. CLARK, ET AL.

VERSUS

JOHN DAVID PARKER, ET AL.


************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2003-1459
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Marc T. Amy, Michael G. Sullivan, and Shannon J. Gremillion, Judges.


**REVERSED AND RENDERED.**

Adam L. Ortego, Jr.
Assistant Attorney General
One Lakeshore Drive, Suite 1200
Lake Charles, Louisiana 70601
(337) 491-2880
Counsel for Defendants/Appellants:
        Trooper John David Parker
        Louisiana Department of Public Safety

Michael H. Schwartzberg
Vamvoras & Schwartzberg
1111 Ryan Street
Lake Charles, Louisiana 70601
(337) 433-1621
Counsel for Plaintiffs/Appellees:
        Robbie L. Clark
        Herman Clark

**SULLIVAN, Judge.**

The defendants, State Trooper John Parker and the Louisiana Department of Public Safety, Office of the State Police (the State Police), appeal the judgment of the trial court rendered in favor of the plaintiff, Robbie L. Clark, and against them finding that Trooper Parker committed civil rights violations against Ms. Robbie Clark and awarding her $50,000.00 in damages, $60,000.00 in attorneys fees, $3,350.57 to cover the cost of depositions and medical records, $1,700.00 in expert witness fees, and casting defendants with court costs of $6,575.70. For the following reasons, we reverse.

## FACTS AND PROCEDURAL HISTORY

This matter arose out of a child custody dispute that escalated to a physical confrontation between the children's grandmother and step-father. Herman Clark and Julie Parker,[1] former spouses, share joint custody of their two minor sons, Weston and Cameron Clark. Pursuant to a stipulated judgment signed by the Thirty-Sixth Judicial District Court, Mrs. Parker was designated as the domiciliary parent and Mr. Clark was given visitation rights, including every Wednesday from 4:00 p.m. until 8:30 a.m. the next morning and every other weekend. Weston and Cameron spent the night of Wednesday, September 4, 2002, with their father, who brought them both to school on Thursday morning. Shortly thereafter, Weston called his mother, asking her to pick him up because he did not feel well. Because she and her then fiancé, Trooper Parker, were at work and unable to pick him up, Mrs. Parker called Mr. Clark, who

---

[1]Although the petition named Julie Clark as a defendant, she and Trooper Parker were married after the incident at issue, and she will be referred to as Julie Parker or Mrs. Parker in this opinion.

1

was not working that day, and asked him to pick up Weston. Mr. Clark agreed but asked his mother, Ms. Robbie Clark, to pick up Weston and bring him to her house.

Although there is much disagreement as to what happened next, the parties admit that a series of threatening telephone calls ensued between Mrs. Parker, Ms. Robbie Clark, Mr. Clark, and his current wife, Pamela Clark, and Mrs. Parker decided to retrieve Weston from his grandmother's house. Before doing so, Mrs. Parker accompanied by Trooper Parker went to the DeQuincy Police Department requesting assistance in retrieving Weston from Ms. Robbie Clark's house. According to Mrs. Parker, she sought out police assistance because she did not want there to be any trouble. Officer Matt Quebodeaux agreed to follow the Parkers to Ms. Robbie Clark's house in a marked police car.

Upon arriving at their destination, Officer Quebodeaux was approached by Mr. Clark, who refused to produce Weston as requested and, instead, began yelling and cursing at the officer, leading to Officer Quebodeaux's decision to arrest him. As Officer Quebodeaux was directing Mr. Clark to his patrol car, Weston, who was eleven years old at the time, began hitting the officer on the back, prompting Trooper Parker to exit Mrs. Parker's vehicle to render assistance. As Trooper Parker was pulling Weston away from Officer Quebodeaux, Ms. Robbie Clark intervened by grabbing Trooper Parker around the neck. Trooper Parker then performed, what he termed, "a defensive move" on Ms. Robbie Clark's forearms, and she ended up on the ground.[2] Officer Quebodeaux then drove Mr. Clark to the DeQuincy police station were he was jailed for approximately thirty minutes.

---

[2]The parties offered conflicting testimony regarding whether Ms. Robbie Clark was thrown to the ground or whether she just laid down upon Trooper Parker's touching of her arms.

Ms. Robbie Clark went to DeQuincy Memorial Hospital on the evening of the incident, complaining of shoulder and back pain. Hematomas were noted on her right forearm and lower left leg. However, X-rays revealed no fractures, and she was released. After continuing to suffer shoulder and back pain, Ms. Robbie Clark began treating with Dr. Dale Bernauer,[3] an orthopedic surgeon, about two weeks later. He ordered an MRI of her right shoulder, which revealed degeneration, spurring, and impingement syndrome. Dr. Bernauer performed surgery on her right shoulder on February 6, 2003. When she continued to complain of pain, Dr. Bernauer ordered another MRI of her right shoulder and lumbar spine on August 8, 2003, which revealed a torn right rotator cuff. Dr. Bernauer performed a second surgery on Ms. Clark's right shoulder in September of 2003.

On March 21, 2003, a petition for damages was filed by Ms. Robbie Clark.[4] Named as defendants were Trooper Parker and his employer, the State Police.[5] Ms. Robbie Clark alleged that Trooper Parker's actions against her amounted to assault, battery, and unlawful seizure in violation of the rights and privileges guaranteed to her by the United States and Louisiana Constitutions. She sought damages for the physical and emotional injuries that she allegedly suffered as a result of the defendants' conduct, along with punitive and exemplary damages, and attorney fees.

---

[3]Dr. Bernauer had performed fusion surgery on Ms. Robbie Clark's low back in September of 1998.

[4]Mr. Clark, both in his individual capacity and as the tutor of his minor sons, Weston and Cameron, was also an original plaintiff, but his claims were dismissed prior to trial.

[5]Officer Quebodeaux, the City of DeQuincy, and Mrs. Parker were also named as defendants, but all claims against them were dismissed before trial.

This matter was originally scheduled as a jury trial. However, after Ms. Robbie Clark stipulated that the total amount of her claim did not exceed the jury threshold of $50,000.00, exclusive of interest, costs, and attorney fees, the matter was rescheduled as a bench trial, which took place on March 10, 2008. The following day, the trial court issued extensive reasons for ruling in open court. Judgment was signed on April 1, 2008, in favor of Ms. Robbie Clark and against Trooper Parker in the amount of $50,000.00, consisting of $25,000.00 in compensatory damages and $25,000.00 in special damages, based upon the trial court having concluded that Trooper Parker violated both 42 U.S.C. § 1983 and La.Civ.Code art. 2315. The State Police was found vicariously liable in solido with Trooper Parker for the $50,000.00 judgment. In addition, judgment was rendered in favor of Ms. Robbie Clark and against Trooper Parker for $60,000.00 in attorney fees and $3,350.57 in deposition and medical records costs pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988. The defendants were ordered to pay Ms. Robbie Clark $1,700.00 in expert witness fees. Finally, the defendants were taxed with court costs in the amount of $6,575.70.

Trooper Parker and the State Police appeal, assigning the following six assignments of error:

1. The trial court erred in ruling on the issue of qualified immunity prior to hearing any evidence on the issue.

2. The trial court erred in admitting a Louisiana State Police Internal Affairs Report which was not related to the incident at issue.

3. The trial court erred in excluding an expert witness prior to hearing any evidence on the issue.

4. The trial court erred in limiting the proffer of the excluded expert's testimony to a ten-minute presentation.

5. The trial court erred in finding that excessive force was used.

4

6. The trial court erred in awarding attorney fees.

**DISCUSSION**

This court discussed the appellate standard of review in *Dorty v. City of Pineville*, 01-1470, p. 2 (La.App. 3 Cir. 4/3/02), 815 So.2d 393, 395, *writ denied*, 02-1271 (La. 8/30/02) 823 So.2d 950, where we explained that "[a] trial court's findings of fact are subject to the 'manifest error' or 'clearly wrong' standard of review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). However, when the issue is a question of law, the appellate court simply determines whether the trial court's decision is legally correct or incorrect."

*Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989), involved an excessive force claim arising under the Fourth Amendment of the United States Constitution brought under 42 U.S.C. § 1983. Therein, the Supreme Court stated:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in a excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. . . . An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Id.* at 396-97.

A plaintiff asserting an excessive force claim under Section 1983 is "required to show a significant injury that resulted from the use of objectively unreasonable

force that was clearly excessive of the need." *Penn v. St. Tammany Parish Sheriff's Office*, 02-893 (La.App. 1 Cir. 4/2/03), 843 So.2d 1157, 1160. On the other hand,

> [t]o prevail on a negligence claim under La.Civ.Code art. 2315, the plaintiff must prove by a preponderance of the evidence that: (1) defendant had a duty to conform his conduct to a specific standard (duty); (2) defendant failed to conform his conduct to the appropriate standard (breach of duty); (3) defendant's conduct was the cause-in-fact of plaintiff's injuries (cause-in-fact); (4) defendant's conduct was a legal cause of plaintiff's injuries (the risk and harm caused to plaintiff was within the scope of the protection afforded by the duty); and (5) plaintiff incurred actual damages (damages).

*Gray v. Economy Fire & Cas. Ins. Co.*, 96-667 (La.App. 3 Cir. 11/6/96), 682 So.2d 966, 970 (footnote omitted).

***Excessive Force***

In their fifth assignment of error, the defendants argue that the trial court's individual findings of fact are inconsistent and, taken together, do not support the trial court's ultimate finding that Trooper Parker used excessive force against Mrs. Robbie Clark. They specifically refer to the following findings of fact, which we quote:

1. While Officer Quebodeaux was arresting Herman Clark, Weston began hitting the back of Officer Quebodeaux and may have been reaching for something;

2. Trooper Parker got out of the car and retrieved Weston by pulling him on the collar of the shirt;

3. Trooper Parker acted as a state trooper;

4. Robbie Clark did touch Trooper Parker in the neck or collar area;

5. Trooper Parker performed some type of maneuver on Robbie Clark;

6. The Trial Court stated ". . . and so I find that while he [Trooper Parker] certainly had — could take some action against Ms. Clark for touching him, I don't find that the action he took was reasonable;

6

7. While Trooper Parker could have removed Robbie Clark's hands from his person, he went too far by grabbing her forearm and making a maneuver on her that caused her to go to the ground, that resulted in injuries, and that this amounted to excessive force under the circumstances;

8. The Trial Court found that Trooper Parker used excessive force because when you consider excessive force you look at the amount of the injury and the intent of the officer in inflicting the injury;

9. It is disputed as to whether or not Robbie Clark intentionally sat herself on the ground or was physically thrown to the ground, but suffice it to say there was a maneuver done to her and she ended up on the ground;

10. The Trial [Court] found that it's questionable on how bad — how hard Robbie Clark hit the ground, and whether she hit the ground voluntarily;

11. The Trial Court admitted that he had difficulty in finding a § 1983 violation, but he stated that ". . . [a]s I interpret the jurisprudence, I think I have to find a violation of 1983. . . ."

We have thoroughly reviewed the record and find ample support for the trial court's factual findings that: Trooper Parker acted as a state trooper in stopping Weston from attacking Officer Quebodeaux; Ms. Robbie Clark touched Trooper Parker in the neck area; Trooper Parker was allowed to take some action against Ms. Robbie Clark; and, Trooper Parker performed a maneuver on Ms. Robbie Clark after which she ended up on the ground. Accordingly, those factual findings are affirmed.

The trial court was unable to determine whether or not Ms. Robbie Clark was forced to the ground by Trooper Parker or whether she intentionally sat on the ground after he began his defensive maneuver on her. Accordingly, Ms. Robbie Clark failed to meet her burden of proof under either 42 U.S.C. § 1983 or La.Civ.Code art. 2315, and thus the trial court erred in finding that Trooper Parker was liable for her injuries.

7

After reviewing the record de novo, we find that Trooper Parker's actions in removing Ms. Robbie Clark's hands from his neck area, in the context of the highly volatile atmosphere at hand, were not unreasonable under the circumstances. We are convinced that Trooper Parker did not use more force than was necessary and that he acted as any other reasonable officer would have acted when presented with a similar situation. The atmosphere was very tense, and Trooper Parker had little time to contemplate what action was best to be taken to diffuse the situation. We reverse the trial court's conclusion that Trooper Parker was guilty of using excessive force against Ms. Robbie Clark. Accordingly, the judgment of the trial court is reversed in its entirety.

Moreover, because our disposition of the defendants' fifth assignment of error calls for reversal of the complained of judgment, we pretermit any discussion of the defendants' remaining assignments of error.

## CONCLUSION

The judgment of the trial court rendered in favor of Robbie L. Clark and against State Trooper John Parker and the Louisiana Department of Public Safety, Office of the State Police, is reversed in its entirety. Costs of this appeal are assessed to the plaintiff.

**REVERSED AND RENDERED.**