STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-384


CARLOS TURNER

VERSUS

LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, ET AL.



**********


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20101458
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and John E. Conery, Judges.


**AFFIRMED.**

**Cooks, J., dissents and assigns reasons.**


**John G. Swift**
**Donna R. Moliere**
**Swift & Rhoades, LLP**
**Post Office Box 53107**
**Lafayette, LA 70505-3107**
**(337) 572-9877**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Lafayette City-Parish Consolidated Government**
    **Jonathon Sanchez**

**Myles J. Johnson**
**3211 115th Avenue NE #166**
**Bellevue, WA   98004**
**(504) 234-8264**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Carlos Turner**

**AMY, Judge.**

The plaintiff alleged that he sustained injury and related damages after police officers placed him face down on the concrete with his hands behind his back before patting him down for weapons. The plaintiff, a paraplegic confined to a wheelchair, asserted that he had warned the officers that he could not be placed in that position. A named officer and four unnamed officers, along with the City-Parish Government, were named as defendants in the plaintiff's suit, which advanced state and federal theories of recovery. Upon motion on behalf of the defendants, the trial court entered summary judgment, dismissing the plaintiff's petition. The plaintiff appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

The plaintiff, Carlos Turner, alleged that in the early morning hours of March 4, 2009, he and a passenger, Jermaine St. Julien, were seated in his vehicle in the parking lot of a Lafayette business while they awaited the return of a group of their friends. Mr. Turner asserted that he was awakened by strobe lights and his passenger leaving the vehicle. Thereafter, he was ordered to exit the vehicle by Lafayette Police Officer Jonathon Sanchez and another, unidentified, officer who had approached the car. The plaintiff alleged that he and his passenger informed the officers that he was a paraplegic and required the use of a wheelchair to exit the vehicle. In the petition instituting this matter, the plaintiff stated that: "Officer Sanchez and John Doe One did not heed Mr. Turner's request for his wheelchair and dragged him from his vehicle" and subsequently "placed him face down on the pavement and cuffed his hands behind his back." The plaintiff asserted that the officers placed him in this position despite him having informed them that he was prohibited from being placed in this position due to his "physical and medical

condition" and that "cuffing his hands behind his back further aggravated his condition." He stated that he was required to stay in this position a "significant amount of time."

The plaintiff alleged that other officers arrived on the scene during the period of investigation, including a superior officer who did not respond to his request to speak with him, despite his complaints of pain due to the positioning. At the conclusion of the investigation, the plaintiff alleged that he was not permitted to drive home despite not being administered "a sobriety exam, breathalyzer test, or told why he would not be allowed to drive himself home." He subsequently accepted a ride to his home by one of the police officers.

In his petition instituting his matter, the plaintiff named Officer Sanchez and the three unidentified officers (named as Officers John Doe One, Two, and Three) as defendants. Additionally, the plaintiff named the Lafayette City-Parish Consolidated Government (initially erroneously named as the City of Lafayette) as a defendant, specifically pleading the doctrine of respondeat superior under La.Civ.Code art. 2320.[1] Therein, the plaintiff alleged that: "As a result of the actions of the defendants . . . Mr. Turner has suffered aggravation of his spinal cord

---

[1] Louisiana Civil Code Article 2320 provides:

Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.

. . . .

In the above cases, responsibility only attaches, when the masters or employers, . . . might have prevented the act which caused the damage, and have not done it.

The master is answerable for the offenses and *quasi*-offenses committed by his servants, according to the rules which are explained under the title: *Of quasi-contracts, and of offenses and quasi-offenses.*

2

injury, and medical complications associated with the two Harrington Rods securing his spinal cord." The petition advanced causes of action pursuant to 42 U.S.C. § 1983[2] (specifically Fourth and Fourteenth Amendment Claims) as well as state tort theories of recovery related to battery and negligence. The plaintiff also sought attorney fees and costs pursuant to 42 U.S.C. § 1988.[3]

In October 2013, the City, acting on behalf of all of the defendants, filed a motion for summary judgment, seeking dismissal of the plaintiff's claims. The

---

[2] Entitled "Civil Action for deprivation of rights," 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[3] Entitled "Proceedings in vindication of civil rights," 42 U.S.C. § 1988 provides, in part:

(a) Applicability of statutory and common law

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

(b) Attorney's fees

In any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]

3

City attached various exhibits to its motion, including correspondence from the Chief of Police to the plaintiff in which he related the findings of the police department's investigation of the plaintiff's complaint. Therein, the Chief of Police suggested that the officers had found the plaintiff "passed out behind the wheel" of his vehicle, which was running; that the plaintiff had admitted to being too intoxicated to drive or understand what the officers were requesting of him; that the plaintiff had a handgun in the seat next to him; that the plaintiff's passenger was intoxicated and vomiting; and that, once it was learned that the plaintiff needed use of the wheelchair, and that after the scene was secured, he was given access to the wheel chair.

The Chief of Police further reported to the plaintiff that his investigation had revealed that, although a supervisor was at the site, five officers reported that the plaintiff did not ask to speak to him and that, upon a later inquiry, the plaintiff had denied being injured in any way, but only that he did not like being placed on the ground. Finally, the Chief of Police noted that he was offered a courtesy ride home and that he was not "arrested for OWI (although [he] could have been)." Additionally, the City attached excerpts from the depositions of both the plaintiff and Mr. St. Julien wherein they explained their version of events at issue as well as an affidavit of Sergeant John L. Miller, who set forth the response protocol of the department.

In its supporting memorandum, the City argued that, in light of the evidence developed by its exhibits, the plaintiff would be unable to meet his burden of proving the elements of his respective causes of action. With regard to the federal claims, the City asserted, in part, that the plaintiff would be unable to show the clearly established right that was allegedly violated, that the conduct of the officers

4

violated that right either by excessive force or unreasonable detention, nor would he be able to demonstrate that any such force/detention caused injury. It further suggested that its showing demonstrated the unavailability of punitive damages and, in turn, the availability of its defense of qualified immunity due to reasonableness of the officer's actions in light of the need for officer safety. Similarly, and with regard to the plaintiff's state law claims and the related assertion of vicarious liability, the City argued that summary judgment was appropriate for the state law claims insofar as the evidence demonstrated that the stop/search procedure was reasonable under the circumstances and the force used was minimal.

In opposition, the plaintiff offered no additional exhibits. However, he argued that, as a paraplegic requiring the use of a wheelchair, he was a member of a protected class due to application of the American With Disabilities Act and that information available via the Internet revealed that police officers responding to those living with disabilities required the use of different protocol. He further suggested that the details of the stop indicated that it was not reasonable. Finally, the plaintiff alleged that, with regard to the need to prove a causal connection between the police conduct and some injury, "his injuries were sustained as a direct result of the officers forcibly removing him from this vehicle, placing him face down on the pavement, and handcuffing him behind his back." With regard to the State law claims, the plaintiff asserted in his brief in opposition that "when the officers forcibly removed him from his vehicle and placed him face down on the pavement cuffing his hands behind his hands behind his back, that this action was the cause-in-fact of his injuries."

Following a hearing, the trial court judge entered summary judgment in favor of the defendants, dismissing the plaintiff's claims against all defendants. The plaintiff appeals, asserting that the trial court failed to consider that:  1) "there really was no need, under the facts and circumstances surrounding the stop of Carlos Turner on March 4, 2009, for Mr. Turner to be forcibly removed from his vehicle, denied access to his wheelchair, and subsequently handcuffed face down on the pavement thereby causing substantial personal injury"; and 2) failed to "consider that [the] Americans with Disabilities [Act] require[s] a higher standard of care and protection when dealing with police officers, physical contact, and detention.  The officers involved in this incident were clearly not properly trained, and as a direct result, caused significant bodily injury to Mr. Turner."

## Discussion

*Summary Judgment*

Louisiana Code of Civil Procedure Article 966(B)(2) provides that summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Article 966(C)(2) further advises that the moving party bears the burden of proof. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant is not required to negate all essential elements of the adverse party's claim, action, or defense. *Id.* Rather, it is the movant's burden "to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* Thereafter, if the adverse party does not

6

produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Id.*

Furthermore, the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of all but certain enumerated actions. La.Code Civ.P. art. 966(A)(2). It is favored in the law and "shall be construed to accomplish these ends." *Id.* On appeal, the reviewing court reviews a trial court's action on the motion for summary judgment de novo, using the same criteria available to the trial court, i.e., whether genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880.

*Causes of Action*

As for his federal claims, the plaintiff lodged two separate claims under 42 U.S.C. § 1983 for alleged violations of the Fourth and Fourteenth Amendments. With regard to the Fourth Amendment, the plaintiff alleged that the defendant officers used "excessive force on him given the warnings presented to them by Mr. Turner and his passenger, as well as [his] obvious medical condition." He alleged that he "suffered and continues to suffer damages" associated with that purported violation.

In addressing excessive force claims made pursuant to the Fourth Amendment right against unreasonable seizure, the United States Court of Appeals, Fifth Circuit has explained that a plaintiff must establish an (1) injury that (2) resulted directly and only from a use of force that was clearly excessive, and (3) that the excessiveness was clearly unreasonable. *Ramirez v. Knoulton*, 542 F.3d 124 (5th Cir. 2008). *See also Clark v. Parker*, 08-941 (La.App. 3 Cir. 2/4/09), 2 So.3d 1262 (wherein a panel of this court addressed United States Supreme

Court jurisprudence in discussing the "reasonableness" of a particular use of force and noting that the "reasonableness" inquiry is an objective one, evaluating the facts and circumstances confronting the subject police officers without regard to underlying intent or motivation), *writ denied,* 09-401 (La. 4/13/09), 5 So.3d 165.

With regard to his remaining claim under 42 U.S.C. § 1983, the plaintiff contends that the defendant officers, while acting under color of state law, deprived him of his rights "under the Due Process Clause of the Fourteenth Amendment of the United States Constitution by failing to recognize that detaining a person who is paraplegic requires a higher standard of physical care than detaining an able bodied citizen." He alleged generally that he "suffered and continues to suffer damages" as a result of that purported violation.

Certainly, the Fourteenth Amendment, via its Due Process Clause, provides a substantive right to be free from the abusive use of government power without legitimate enforcement objective. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986). In order to be actionable thereunder, however, the subject government official's abuse of power must rise to the conscious-shocking level, as determined by the circumstances of each case. *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708 (1998). Further, a plaintiff may be awarded only such damages as the evidence shows to have been caused by the purported wrongful conduct. *See Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042 (1978). In addition to any type of physical injury the plaintiff may be alleging here, it is clear that intangible, compensatory damage such as emotional distress requires proof of

actual injury. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537 (1978).[4]

Finally, the plaintiff lodged state law battery and negligence claims against the defendants pursuant to La.Civ.Code art. 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Under the attendant duty-risk analysis, a plaintiff seeking recovery under Article 2315 must prove that: 1) substandard conduct was a cause-in-fact of the plaintiff's injuries; 2) the defendant's conduct failed to conform to the appropriate standard; 3) the defendant had a duty to conform his conduct to a specific standard; 4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and 5) actual damages. *Perkins v. Entergy Corp.*, 00-1372 (La. 3/23/01), 782 So.2d 606.

Having set forth the elements attendant to each of the plaintiff's causes of action, we turn to consideration of the parties' submissions in light of the trial court's ruling on the motion for summary judgment.

Pointedly, because of the state of the submission offered in support of and in opposition to the motion for summary judgment, we are not called upon to reach the contested issue of whether the officers' actions were appropriate/reasonable as that issue relates to each of the above claims. Rather, we simply observe that each

---

[4] The petition in this case seeks recovery for compensatory damages and makes no claim for injunctive or declaratory relief that could potentially render the plaintiff a "prevailing party" for purposes of relief under 42 U.S.C. § 1988. In *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566 (1992), the United States Supreme Court explained that a plaintiff "prevails" when actual relief on the merits of his or her claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. An award of damages, injunction, or declaratory judgment will usually satisfy that test. *Lefemine v. Wideman*, _U.S. _, 133 S.Ct. 9 (2012). However, damages awarded in a 42 U.S.C. § 1983 claim must be designed to compensate injuries caused by a Constitutional deprivation. *Farrar*, 506 U.S. 103. Thus, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief . . ., the only reasonable attorney fee is usually no fee at all." *Id.* 506 U.S. at 115.

of the federal and state claims requires a plaintiff to demonstrate damages and causation, at least to some extent as a fundamental element. In this case, the plaintiff only generally alleged injury and damages in his petition. However, in support of the motion for summary, the City, on behalf of all defendants, submitted the excerpts of the plaintiff's deposition where he again only alleges injury and does so without specificity. Except for a mention of an MRI bill that he had paid, no details were revealed regarding the nature of his alleged injury or any damages sustained. After this initial showing by the City, and although the plaintiff was required to bear the burden of proof at trial, he did not offer his own evidence in opposition to the motion for summary judgment. *See* La.Code Civ.P. art. 966(C)(2). Thus, the plaintiff failed "to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial[.]" *Id.* Speculation as to the existence and extent of any damages is at odds with this requirement. Accordingly, no genuine issues of material fact exist. *Id.*

As the issue of damages cuts across all of the plaintiff's claims, and he has failed to demonstrate that he will be able to satisfy this necessary aspect of his evidentiary burden of proof at trial, the trial court appropriately entered summary judgment in favor of the defendants. We affirm that decision below, pretermitting further consideration of the plaintiff's arguments.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assigned to the appellant, Carlos Turner.

**AFFIRMED.**

CARLOS TURNER

VERSUS

LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, ET AL.

**COOKS, J., dissenting.**

I respectfully dissent from the majority's decision to affirm the trial court's grant of summary judgment in this matter. The majority does not address Plaintiff's allegations that the officer's acted unreasonably in this case (which was the issue the trial court focused on in granting summary judgment), instead dismissing Plaintiff's case solely on the basis that Plaintiff "only generally alleged injury and damages in his petition." The majority cites this lack of 'specificity" of damages, stating that other than a mention of an MRI bill that he had paid, no details were revealed regarding the nature of his alleged injury or any damages sustained." While I note Plaintiff's deposition testimony alone might well come up short of establishing compensable damages were this a trial on the merits, I find it was sufficient to establish genuine issues of material fact at the summary level as to the existence of damages.

In his deposition, Plaintiff specifically stated he was "sure about [his] back being injured." Plaintiff also steadfastly maintained it was his opinion that his placement on the ground on his stomach with his hands placed behind his back "is what caused his damages." He noted several times the officers' actions put him in "a position I'm [not] supposed to be in." Plaintiff obviously has endured severe, life-altering past injuries to his spinal cord, rendering him a paraplegic. He has two metal Harrington Rods fused to his spinal cord for stability. I find it plausible, if not likely, that Plaintiff suffered anxiety and emotional distress over possible

injuries caused to his spinal cord, when he was placed into what he believed to be an unsafe position by the officers. I strongly reject any argument that no genuine issues of material fact exist as to whether Plaintiff suffered any injury as a result of the incident in question. Any such determination at the summary judgment stage is premature and inappropriate.

Although the majority pretermits any discussion of the reasonableness of the officers' actions due to its conclusion that Plaintiff failed to produce factual support on the existence and extent of damages, I will address that argument. It is undisputed that Plaintiff is a member of a protected class. He is confined to and relies on his wheelchair to travel. These factors were obvious to the officers during the incident in the Super Daq parking lot. In discussing whether the officers' actions at the scene were "reasonable," Defendants contend "the officers had limited information concerning Plaintiff's medical condition." It was not disputed that both Plaintiff and St. Julien, on several occasions, informed the officers of Plaintiff's disability and reliance on his wheelchair. At the time Plaintiff was placed face down on the parking lot ground, with his hands cuffed behind him, the officers were aware Plaintiff was a paraplegic who could only travel through use of his wheelchair. The officers were also immediately informed by Plaintiff that the position he was in was potentially harmful to him. This information, followed by the officers' decision to keep Plaintiff in that position for approximately five minutes, certainly creates a disputed issue as to the "reasonableness" of the officers' actions and whether the force used was excessive given the circumstances.

Defendants vehemently argue the officers' actions were reasonable based on officer safety. A review of the transcript of the hearing on the motion for summary judgment indicates the concern over officer safety was the primary basis for the trial court's ultimate decision to grant summary judgment in Defendants' favor.

The trial court specifically asked Plaintiff the following question at the hearing on the motion for summary judgment:

> What should [the officers] have done? What should or could they have done differently that would have taken care of the officers' safety concerns because of the guns - - you've got to get him out - - and where do you put him? Where do you put him while the wheelchair is being assembled?

Considering the situation, there appear to be several alternative methods that a factfinder could conclude were reasonable and preferable to the officers' decision to place a cooperative paraplegic, face down on the ground with his hands cuffed behind his back, despite the fact they were alerted such a position could be harmful to him. I note there were multiple officers present at the scene. After St. Julien was removed and placed on the ground in cuffs, one of the officers could have walked to the other side of the vehicle and removed the firearm located by the driver's seat while Plaintiff was being monitored with his hands clearly visible or otherwise secured. If the officers were still concerned about the possibility of additional weapons, at this point, one officer could have removed and assembled the wheelchair while Plaintiff was watched by another officer. Plaintiff could then have been removed from the vehicle and placed in his wheelchair. It also seems readily apparent that the officers could have removed Plaintiff from his vehicle and placed him in the rear of a police vehicle, in a seated position with his hands cuffed in the front. Lastly, the officers could have positioned Plaintiff in a seated upright position on the ground. Certainly, any of the above mentioned scenarios were easily available to the officers at no additional concern for their safety. At a bare minimum, there are undoubtedly questions of fact that alternative, reasonable methods for Plaintiff's removal from the vehicle were available to the officers at the scene that would have accommodated his physical disability without posing risks of harm to him or the officers' safety.

Defendants argued the officers did in fact "modify their actions to accommodate [Plaintiff's] physical limitations, actions which placed their own safety at risk." Defendants list the following examples as illustrative of the officers' modified actions to accommodate Plaintiff's disability:

> [T]aking time to question [Plaintiff] about his condition and how he usually exited the vehicle, rather than immediately extracting him; officers using both hands to lift him out of the vehicle, thereby restricting their ability to use their hands to respond to a dangerous situation; and taking [Plaintiff's] wheelchair out of the car, assembling it and placing him in it, with his hands cuffed in front of him, before patting him down, although the officers could and should have searched [Plaintiff] on the ground, especially as a weapon had been discovered.

These examples indicate the officers were aware of Plaintiff's disability, and establish their realization that it was imperative they depart from standard procedure in their handling of Plaintiff. However, Defendants do not address why the officers chose to place Plaintiff in a potentially harmful position, and left him there for several minutes after being informed by Plaintiff of the harm it could cause him to remain in that position. As set forth above, there were several alternative methods the officers could have employed to secure the scene which would not have compromised officer safety. The officers' admitted realization of the need to accommodate Plaintiff's disability only highlights that a factfinder, under the circumstances, could find the officers' decision was unnecessary and excessive. Thus, I would find the trial court's grant of summary judgment, with the presence of these genuine issues of material fact, was inappropriate.